LYLE, et al. *v.* JOHNSON, et al.

No. 41657        January 23, 1961        126 So. 2d 266

*Travis & McKee,* Jackson, for appellants.

156

158

*Satterfield, Shell, Williams & Buford, Jerome B. Steen,* Jackson, for appellee.

Rodgers, J.

This cause of action was brought by Mrs. Laurence Lyle and Miss Doris J. Nordlie, the daughters and only heirs of Mrs. Mary Nordlie, deceased, against Oscar R. Johnson, the owner of Westhaven Sanitarium. It is a suit for damages based upon the alleged negligence of the defendants in failing to prevent the death of Mrs. Mary Nordlie while she was a patient in Westhaven Sanitarium.

It appears from the record that Mrs. Nordlie was discovered floating in a lake near the Sanitarium on the morning of June 5, 1958. It was later determined by autopsy that she had drowned. Mrs. Nordlie was an incompetent. She had been committed to an institution in North Dakota where she had remained for a few months. She was later discharged from the institution and came to Mississippi to make her home with her daughter, Mrs. Lyle. It became apparent to Mrs. Lyle that she should consult a doctor with reference to the condition of her mother, and she called Dr. Lloyd G. Berrong, who had been recommended to her by her family physician. Dr. Berrong arranged for Mrs. Nordlie to have certain "shock treatments" at the Baptist Hospital in Jackson, Mississippi. She was then taken to the Westhaven Sanitarium. Mrs. Nordlie left the Sanitarium about May 10, 1958, and was not heard from for a period of seven days. She later came to the home of her daughter, Mrs. Lyle, and was then reconveyed to the Westhaven Sanitarium.

On the night before she was discovered floating in "White's Lake" the next morning, the attendants at the Sanitarium had seen her at about nine o'clock P. M. She seemed to be in a cheerful frame of mind and was given medication. A note was found in her room after her death, from which an inference could be drawn that she had intended to commit suicide. This case was tried in the circuit court of the First Judicial District of Hinds County, and during the trial, two of the defendants, Victor Mentzel and Mrs. Corrine Nixon, were released by order of the court. The case was submitted to the jury and the jury returned a verdict for the defendant, Oscar R. Johnson.

The appellants here, plaintiffs below, have assigned nine grounds of errors alleged to have been committed in the lower court. All of these grounds, however, may be grouped into three categories: (1) The trial judge

erred in his rulings during the trial and the instructions granted to the defendant as to the degree of care exacted of a private sanitarium towards their patients; (2) that the jury, because of its passion and prejudice, disregarded the overwhelming weight of the evidence and returned a verdict contrary to the law applicable to the facts in evidence, and (3) the attorney for the defendant, Oscar R. Johnson, is alleged to have made a prejudicial statement in the presence of the jury which is said to be so prejudicial as to require a reversal of this case.

Taking these alleged errors in the order above set out, we are confronted in the outset with a question as to what duty was owed to the patient, Mrs. Mary Nordlie, by the Westhaven Sanitarium. In passing upon actions for damages cases of negligence are grounded upon a wrong and consist in the breach of a duty on the part of one person to protect another against injury, the proximate result of which is an injury to the person to whom the duty is owed. 38 Am. Jur. 651. It is perhaps said more frequently that negligence is the failure to observe a legal duty. 38 Am. Jur. 654. The suit here under consideration is based upon an alleged duty to take care of Mrs. Nordlie. The appellants use the words "custodial care." This duty was based upon a contract entered into on behalf of Mrs. Nordlie by her daughter, Mrs. Lyle, with the manager of the Westhaven Sanitarium, in consideration of a certain monthly payment to be paid by the guardian of Mrs. Nordlie. The appellants assert that the care imposed by the contract was, under the circumstances, more than "ordinary care", since it was known to the manager of the Westhaven Sanitarium that Mrs. Nordlie was an incompetent. The appellants claim that she should have either been kept inside the Sanitarium, or that she should have been watched at all times to prevent her from wandering away from Westhaven. They do not claim that Mrs. Nordlie should have been kept under "lock and key."

Appellants claim that she should have been under the watchful eye of the agents of the Westhaven Sanitarium at all times when she was permitted outside the confines of the building.

The appellants further claim that the mere fact that Mrs. Nordlie was found drowned in ''White's Lake'' causes the legal principle of res ipsa loquitur to come into play and that the defendant was, therefore, prima facie liable.

The degree of care exacted of a private institution toward their patients is, under the general law, ''such reasonable care and attention for their safety as their mental and physical condition, if known, may require.'' 26 Am. Jur. 595. ''While it may be the duty of hospital authorities, under some circumstances, to exercise force to retain patients for the purpose of guarding them from injury, they may, under other circumstances, incur liability for the forceful detention of patients or inmates.'' 26 Am. Jur. 593.

This Court has had this question presented on several occasions with reference to patients in private institutions. In the case of Maxie v. Laurel General Hospital, 130 Miss. 246, 93 So. 817, this Court said: ''The business of a hospital for the sick and afflicted, conducted for private gain, carries with it an implied obligation to give the patients their reasonable care and attention,'' citing Meridian Sanitorium v. Scruggs, 121 Miss. 330, 83 So. 532. It was said, however, that the question of liability was ''one for the jury and not for the court.''

In the Meridian Sanitorium case, supra, a nurse put a hot water bottle against an unconscious patient's foot, and there the Court said that a patient is generally admitted to a hospital conducted for private gain under either an expressed or implied obligation that he receive such reasonable care and attention for his safety as his mental and physical condition, if known, may require.

In the case of Richardson v. Dumas, 106 Miss. 664, 64 So. 459, a nineteen year old boy, ill with fever, was taken to a private sanitarium owned and operated for profit in the City of Natchez. There was a contract between the sanitarium and the father of the patient to "give his son all attention required and to furnish him with a trained nurse each night and day." It was said in this case that "under the contract it was the duty of appellee to give the patient all the attention required. The facts presented by the evidence, the very nature of the occurrence, shows a prima facie case of negligence in failing to exercise due care in nursing and looking after the patient." The contract in that case was an agreement "with appellant, for a price named, to give his son all the attention required, and to furnish him with a trained nurse each night and day."

The appellant claims that the contract in the case at bar was a custodial contract and required constant care and observation, and bases this claim upon the admission of Mr. Mentzel that "we should watch her a little more closely, but as far as lock her up, no." We do not believe that this alleged admission increases the care due Mrs. Nordlie above the reasonable care and attention required of a private sanitarium; because it is evident that the only additional care that could have been given to the deceased was either to put her under "lock and key" or to furnish her with a private nurse or attendant to constantly look after her. Mrs. Lyle did not contract for such a service and she admitted that she did not expect the Sanitarium to keep her mother under "lock and key." The evidence further divulges that it was the custom of the attendants to lock the house at night to prevent intruders from entering the building.

This Court refused to sustain a contention that there should be a "higher degree of care" to the patient in the case of Lagrone v. Helman, 233 Miss. 654, 103 So.

2d 365, in which the Court said: "The appellant's criticism of the instructions is that one fails to instruct the jury that a higher degree of care was owed the plaintiff by the defendant than under ordinary circumstances." Another instruction told the jury that "it was the duty of the defendant to use reasonable care for the safety of the plaintiff, consistent with her age and physical condition.". . . . The jury was properly instructed as to the degree of care required to be exercised in the case before them." See Scoggins v. Vicksburg Hospital, 229 Miss. 770, 91 So. 2d 837. We, therefore, hold that the degree of care required in the present case is such reasonable care and attention for the safety of the patient as her mental and physical condition, when known, may have required.

The appellants complain of several instructions granted to the jury on behalf of the appellee and object to one instruction that was refused the appellants. The instructions granted to the appellee are based on the same "reasonable care" as the instructions granted to the defendant, and state the rule properly. The instruction complained of as having been refused the appellant has therein the following language: "The fact of her death affords reasonable inference in the absence of an explanation by defendant that the death of Mrs. Nordlie arose or was caused by the defendant's lack of reasonable care." This instruction is an effort to get the court to invoke the res ipsa loquitur doctrine. In the case of Palmer v. Clarksdale Hospital, 206 Miss. 680, 40 So. 2d 582, the Court quoted with approval from 9 Wigmore on Evidence, 3rd ed., Section 2509, page 382, as follows:

"There is, however, some uncertainty as to the extent to which res ipsa loquitur may be invoked in cases of injury from medical treatment. This is in part due to the tendency, in some decisions, to lay undue emphasis on the limitations of the doctrine, and to give too little

attention to its basic underlying purpose. The result has been that a simple, understandable rule of circumstantial evidence, with a sound background of common sense and human experience, has occasionally been transformed into a rigid legal formula, which arbitrarily precludes its application in many cases where it is most important that it should be applied. If the doctrine is to continue to serve a useful purpose, we should not forget that 'the particular force and justice of the rule, regarded as a presumption throwing upon the party charged the duty of producing evidence, consists in the circumstance that the chief evidence of the true cause, whether culpable or innocent, is practically accessible to him but in accessible to the injured person.' "

The Court further said: "It will be noted . . . . . . that the doctrine of res ipsa loquitur does not in any instance create a case of absolute liability, but simply raises a presumption or makes out a prima facie case of negligence to the extent that the defendant is called upon to meet it with an explanation."

██ █ In the case at bar both sides offered evidence and the case was submitted to a trial jury on conflicting evidence. We, therefore, hold that the doctrine of res ipsa loquitur does not apply in this case, and since the instructions granted to the plaintiff and defendant taken together announce the proper rule, we hold there was no error in submitting this case to the jury on the ruling of the court and the instructions granted to litigants. Scoggins v. Vicksburg Hospital, 229 Miss. 770, 91 So. 2d 837.

██ █ The question presented as to whether or not the jury, because of its passion and prejudice, disregarded the overwhelming weight of the evidence and returned a verdict contrary to the law applicable to the facts and evidence has been considered by the Court and the testimony offered carefully reviewed, and the Court is of the opinion that the testimony is in conflict and has

presented a question for the jury. The Court cannot, therefore, say that the jury exhibited passion and prejudice in finding for the defendant under the facts in this case.

The appellant has complained to this Court of a statement made by the attorney for the appellee during the course of the trial, in which the attorney stated: "If the court please, of course, they have a right to claim the privilege and seal the lips of the doctor, and we can't . . . ." This statement was made to the judge at the time when an objection was being made to the testimony of Dr. Lloyd Berrong. The appellant claims this is reversible error because it is said to be an inference that the appellant is attempting to conceal the testimony of Dr. Berrong from the jury. The attorney for the appellant made no objection to this statement, nor did he request the trial judge to instruct the jury on the statement, nor did he ask the court for a mistrial on the grounds of an erroneous inference having been presented to the jury. It has been argued to the Court that the court could have granted an instruction with reference to the doctor's testimony under our cases, but we do not find it necessary to pass on this question here.

██ The court has considerable latitude in its action with reference to the conduct of attorneys during the trial of a case, and it is only when their conduct is so reprehensible as to become prejudicial to one of the litigants that the court can be charged with error for failing to promptly instruct the jury. ██ The trial judge may of his own motion interfere with improper and prejudicial statements of attorneys, but it is also the duty of counsel to object and preserve his objection, and promptly make a motion for a new trial.

In the case of Mars v. Hendon, 178 Miss. 157, 171 So. 880, the Court said: "We think it was improper to introduce, before the jury, the fact that Mars, appellant, was under indictment for perjury. . . . . We could not reverse

on this ground, because there was no motion for a mistrial. We hold, however, that counsel should have not only objected to the remarks, but when such objection was sustained, should have made a motion, if desired, for a mistrial. It would be unfair to permit a party, in such case, to gamble upon the verdict or decree by taking advantage of a favorable verdict, while setting aside an unfavorable one.'' See also 3 Am. Jur., Appeal & Error, Secs. 1059, 1060; Brush v. Laurendine, 168 Miss. 7, 150 So. 818.

■■ ■ The Court, therefore, holds that since the appellant did not preserve his objection to the alleged prejudicial error the case will not be reversed on that ground.

Appellants complain that the plaintiff in the court below should have granted a motion for a judgment non obstante verdicto, but we are of the opinion that this case was properly submitted to the jury and the verdict of the jury is binding. We find no reversible error in the trial below and the case is affirmed.

Affirmed.

*McGee, C.J.,* and *Lee, Kyle* and *Gillespie, JJ.,* concur.