LEE, C.J., CONCURRING IN PART AND DISSENTING IN PART:
 

 ¶ 49. I agree with the majority that pursuant to the supreme court's decision in
 
 Pioneer Community Hospital of Newton v. Roberts
 
 ,
 
 214 So.3d 259
 
 (Miss. 2017), the minor's saving statute applies to Irby's claim through Collins and tolled the statutory limitations period. Therefore, Collins's claim was timely.
 

 ¶ 50. However, I disagree with the majority that the application of the minor's saving statute is necessary to preserve Collins's intentional-act claim and that the trial court was correct in dismissing Collins's negligence claim. Additionally, I still disagree-as I did with the previous, now-withdrawn opinion-with the majority decision that Collins's claim on remand is limited to simply an intentional tort. Collins's amended complaint asserted two medical-malpractice claims for Irby's wrongful death by suicide-one for negligence and one for an intentional act. Both are medical-malpractice claims to which the two-year statute of limitations applies-therefore, both of Collins's claims were already timely filed.
 

 ¶ 51. The majority states that "the trial court correctly dismissed Collins's negligence cause of action as there is no basis for a negligence action for wrongful death by suicide. Thus, it is unnecessary for the trial court to revisit the negligence issue on remand." However, I find that supreme court's recent decision in
 
 Singing River Health Systems v. Vermilyea
 
 , 2016-IA-01096-SCT,
 
 242 So.3d 74
 
 ,
 
 2018 WL 1323581
 
 (Miss. Mar. 15, 2018), clearly demonstrates that both the claims asserted in this case are recoverable theories under medical malpractice, and further, that it was error for the trial court to dismiss the negligence count for failure to state a claim. I also find that the majority misconstrues
 
 Truddle v. Baptist Mem'l Hosp.-DeSoto Inc
 
 .,
 
 150 So.3d 692
 
 (Miss. 2014), in which our supreme court unequivocally categorized the intentional-act claim at issue as one for medical malpractice. Accordingly, I find that-notwithstanding the application of the minor's saving statute-Collins's claims were already timely filed under the two-year statute which applies
 to medical-malpractice claims. As such, I also find that, on remand, both of Collins's claims are for medical-malpractice and the suit on remand is not limited to, nor characterized as simply an intentional-tort claim. Thus, I respectfully dissent.
 

 ¶ 52. Mississippi's medical-malpractice statute, Mississippi Code Annotated section 15-1-36 (Rev. 2012), "makes no such distinction between intentional and unintentional torts ...."
 
 Chitty v. Terracina
 
 ,
 
 16 So.3d 774
 
 , 778 (¶ 10) (Miss. Ct. App. 2009). Rather, "the main issue [is] whether the tort 'arises out of the course of medical, surgical or other professional services.' "
 

 Id.
 

 at 779
 
 (¶ 12) (citing
 
 Miss. Code Ann. § 15-1-36
 
 ) ). Thus, whether Dr. Madakasira's "alleged actions were intentional, or merely negligent, is not determinative."
 

 Id.
 

 Here, both of Collins's claims asserted against Dr. Madakasira complain of tortious conduct arising out of the course of his medical-professional services as Irby's psychiatrist. Therefore, Collins's claims are medical-malpractice claims. The supreme court's decisions in both
 
 Truddle
 
 and
 
 Singing River
 
 demonstrate as much.
 

 ¶ 53. In the instant case, Collins's amended complaint for Irby's wrongful death by suicide stated two counts for recovery: (1) negligence-"that Dr. Madakasira breached the minimum standards of care which he owed to [Irby] ... [and] [a]s a direct and proximate cause, or a contributing cause ... Irby committed suicide[,]" and (2) irresistible-impulse/intentional act-that "[a]s a direct and proximate result of the intentional acts of Dr. Madakasira ... Irby developed an irresistible impulse to commit suicide and on January 17, 2012[,] he committed suicide." The supreme court has held both theories viable in the context of medical-malpractice claims for wrongful death by suicide.
 

 ¶ 54. In
 
 Truddle
 
 , the supreme court discussed the irresistible-impulse doctrine as it applies to medical-malpractice claims.
 
 Truddle
 
 ,
 
 150 So.3d at 697
 
 (¶ 18) (Miss. 2014). Most recently, in
 
 Singing River Health Systems
 
 , the supreme court explained that
 
 Truddle
 
 actually "discussed two lines of cases concerning a third party's liability for another's suicide" and "first reviewed the line of cases concerning the irresistible-impulse doctrine[,]" but then "also recognized precedent holding that liability exists if the plaintiff shows that the defendant owed the decedent a certain duty of care and breached that duty,"-i.e. negligence.
 
 Singing River
 
 ,
 
 242 So.3d at 77-78
 
 ,
 
 2018 WL 1323581
 
 , at *2 (¶ 8),
 
 242 So.3d at 83
 
 ,
 
 2018 WL 1323581
 
 , at *6 (¶ 24). Thus, Collins's suit against Dr. Madakasira for the wrongful death of Irby by suicide is one for medical-malpractice-whether it is pursued under the irresistible-impulse doctrine or under a negligence theory.
 

 I. Negligence
 

 ¶ 55. The majority finds that the trial court correctly dismissed Collins's negligence cause of action for failure to state a claim because it finds, per its interpretation of
 
 Truddle
 
 , there is no basis for a negligence action for wrongful death by suicide. But
 
 Singing River
 
 explicitly rejects the majority's finding.
 

 ¶ 56. In
 
 Singing River
 
 , the plaintiffs filed a wrongful-death suit based in medical negligence against the hospital and medical providers for the decedent's suicide following his hospital discharge.
 
 Id.
 
 at 75,
 
 2018 WL 1323581
 
 , at *1 (¶ 1). The defendants moved to dismiss the claim, arguing
 
 Truddle
 
 operated as "an absolute bar to [the plaintiff's] ability to recover for the suicide of [the decedent]."
 
 Id.
 
 at 76-77,
 
 2018 WL 1323581
 
 , at *2 (¶ 4),
 
 242 So.3d at 77
 
 ,
 
 2018 WL 1323581
 
 , at *2 (¶ 7). The trial court denied the motion to dismiss finding that
 
 Truddle
 
 did not apply to bar the
 plaintiffs' medical-negligence claim.
 
 Id.
 
 at 77,
 
 2018 WL 1323581
 
 , at *2 (¶ 5). The defendants filed an interlocutory appeal and the supreme court affirmed the trial court's decision, rejecting the defendant/appellant's argument.
 
 Id.
 
 at 75,
 
 2018 WL 1323581
 
 , at *1 (¶ 1). "We reject this argument[,]"
 

 that, because [the plaintiff's] amended complaint is grounded in medical negligence and does not allege that [the decedent] committed suicide either (1) while in the defendants' custody, or (2) under an irresistible impulse, proximately caused by the defendant's intentional conduct, that rendered him unable to discern the nature and consequences of suicide, the complaint fails to state a claim upon which relief may be granted.
 

 Id.
 
 at 83,
 
 2018 WL 1323581
 
 , at *6 (¶ 23). Thus, in
 
 Singing River
 
 , the supreme court explained that in medical-malpractice cases a cause of action for wrongful death by suicide, may be maintained under the irresistible-impulse doctrine or negligence given certain factual circumstances.
 

 While Truddle held that the principle that suicide is an intervening, superseding cause that breaks the causal connection between the wrongful act and the death applies in medical negligence cases,
 
 the case also recognized precedent holding that liability exists if the plaintiff shows that the defendant owed the decedent a certain duty of care and breached that duty.
 

 Id.
 
 at 83,
 
 2018 WL 1323581
 
 , at *6 (¶ 24) (emphasis added).
 

 ¶ 57. The supreme court in
 
 Truddle
 
 noted a particular instance where, in a medical-malpractice case, the plaintiff's claim for wrongful death by suicide could be maintained under a theory of negligence-when suicide is committed while the person is in the defendant's custody.
 

 Id.
 

 But, in
 
 Singing River
 
 , the supreme court negated the assumption that this example given in
 
 Truddle
 
 was the only instance where a negligence claim could apply.
 

 The defendants argue that the fact that [the decedent's] suicide occurred when he was outside the hospital's custody is fatal to [the] claim. They contend that
 
 Truddle
 
 stands for the proposition that the decedent must have been under the custody and control of the facility at the time of the death or there can be no liability for a suicide allegedly caused by medical negligence. The dissent takes this position as well. Considering the specific facts alleged in the amended complaint,
 
 we disagree
 
 .
 

 Id.
 
 at 83,
 
 2018 WL 1323581
 
 , at *7 (¶ 26) (emphasis added).
 

 ¶ 58. The
 
 Singing River
 
 Court noted the defendants were "on notice that the decedent was suicidal," and that "they specifically accepted him for treatment for being suicidal and depressed."
 
 Id.
 
 at 83,
 
 2018 WL 1323581
 
 , at *6 (¶ 25). As such, the supreme court stated the defendants had "assumed a duty toward [the decedent] to exercise reasonable care to safeguard him from the known danger he presented to himself, and to exercise such reasonable care for his safety as his mental condition required."
 

 Id.
 

 The supreme court went on to find that under the facts of the case "plaintiffs did present a claim of medical negligence regarding the death of [the decedent]" and that "the medical negligence claim was not subject to dismissal under Rule 12(b)(6)."
 
 Id.
 
 at 84,
 
 2018 WL 1323581
 
 , at *7 (¶ 28).
 

 ¶ 59. Similarly, here, Collins's amended complaint asserted a negligence claim that Dr. Madakasira, as Irby's treating psychiatrist, knew of Irby's mental condition including suicidal ideations, and also knew that Irby did not desire the divorce from Collins. The complaint further alleges that
 in light of this knowledge, Dr. Madakasira breached the minimum standards of care by failing to properly monitor Irby's mental health; executing an affidavit in the divorce proceeding while serving as Irby's treating physician and psychiatrist that it would be in Irby's best interest to have a divorce granted-which was in direct conflict with Irby's desire and testimony; and by failing to prescribe an appropriate treatment for Irby to prevent his suicide. Finally, the negligence claim concludes that as a "direct and proximate cause, or a contributing cause, of the breach of the minimum standard of care by [Dr. Madakasira] ... Irby committed suicide." The facts alleged in the amended complaint state that Irby told his wife Collins in a telephone conversation that he was forced into the divorce which he did not want and that he had no reason to live. A short time later Irby was found dead in his residence, having committed suicide. I do not consider the merits of the complaint and also recognize that negligence is an issue for the fact finder. However, taking the allegations of the amended complaint as true, Collins's amended complaint stated a negligence claim for Irby's death by suicide which, in accordance with
 
 Singing River
 
 , was not subject to dismissal under Rule 12(b)(6). Accordingly, I would reverse the trial court's dismissal of Collins's negligence claim and remand for further proceedings. Therefore, with respect to this issue, I dissent.
 

 II. Irresistible-Impulse Doctrine
 

 ¶ 60. In addition to Collins's negligence claim, which the trial court erroneously dismissed for failure to state a claim, Collins's amended complaint asserted an intentional-act claim via the irresistible-impulse doctrine. The majority finds that Collins's claim under the irresistible-impulse doctrine, which was otherwise precluded by the statute of limitations governing torts, is saved by the minor's savings statute. Additionally, the majority states that on remand, Collins's wrongful-death claim under the irresistible-impulse doctrine is simply an intentional tort and not one for medical malpractice. However, in
 
 Truddle
 
 , the supreme court addressed the irresistible-impulse doctrine as it applies to medical-malpractice claims arising from an individual's suicide.
 
 Truddle
 
 ,
 
 150 So.3d at 697
 
 (¶ 17). The claim does not cease to be one for medical malpractice simply because the irresistible-impulse doctrine requires the claimant to plead and prove an intentional act.
 

 ¶ 61. Again, a medical malpractice claim is one for "injuries or wrongful death arising out of the course of medical, surgical or other professional services ... [,]" notwithstanding whether the act is negligent or intentional.
 
 Miss. Code Ann. § 15-1-36
 
 . This is exactly the claim Collins's makes-that Irby's wrongful death arose out of the course of medical, professional services, rendered by Dr. Madakasira-under the irresistible-impulse doctrine. Thus, because this claim is a medical-malpractice claim, the minor's savings statute is not necessary to preserve it, as it was already timely filed under the applicable statute of limitations governing medical-malpractice cases.
 

 ¶ 62. Under Mississippi law, the irresistible-impulse doctrine is the exception to the general rule that a third party cannot be held liable for a decedent's suicide.
 

 Id.
 

 According to the irresistible-impulse doctrine, a decedent's suicide is actionable against a third-party defendant as a wrongful-death claim "only if the suicide was proximately caused by the intentional act of the defendant, creating an irresistible impulse in the decedent to take his or her own life."
 

 Id.
 

 at 695
 
 (¶ 11) (citing
 
 State ex rel. Richardson v. Edgeworth
 
 ,
 
 214 So.2d 579
 
 , 585 (Miss. 1968) ). Again,
 
 Truddle
 
 specifically
 discusses how this doctrine applies to medical-malpractice actions.
 

 ¶ 63. In
 
 Truddle
 
 , the supreme court specifically stated that the issue was "whether ... Mississippi law bars
 
 medical-negligence
 
 actions arising from an individual's suicide."
 

 Id.
 

 at 695
 
 (¶¶ 9-10). The supreme court noted that a third party cannot be held liable for a decedent's suicide except under the irresistible-impulse doctrine, and that "this principle extends to medical-malpractice claims."
 

 Id.
 

 at (¶ 18). The majority opinion acknowledges that the
 
 Truddle
 
 case is one of medical malpractice. Yet the majority goes on to find that the medical-malpractice claim in the instant case is an intentional-tort claim and thus subject to a one-year statute of limitations. Mississippi law is clear that a two-year statute of limitations applies to medical-malpractice claims.
 
 Estate of Johnson ex rel. Shaw v. Graceland Care Ctr. of Oxford LLC
 
 ,
 
 41 So.3d 692
 
 , 695 (¶ 10) (Miss. 2010).
 

 ¶ 64. After explicitly stating the issue was "whether ... Mississippi law bars medical-negligence actions arising from an individual's suicide," the
 
 Truddle
 
 court went on to discuss the irresistible-impulse doctrine's application to medical-malpractice cases. The
 
 Truddle
 
 court noted that the "crux of [the plaintiff's] argument ... is that [the decedent's] suicide was the result of medical malpractice, i.e., negligence."
 
 Truddle
 
 ,
 
 150 So.3d at 696-97
 
 (¶ 15). The court stated that in medical-malpractice claims, the burden is upon the plaintiff to
 

 prove (1) the existence of a duty by the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) a failure to conform to the required standard; and (3) an injury to the plaintiff proximately caused by the breach of such a duty by the defendant.
 

 Id.
 

 at 697
 
 (¶ 16). The court explained that nothing in our caselaw has abolished the rule that suicide constitutes an "independent, intervening and superseding event that severs the causal nexus between any wrongful action on the part of the defendant,"
 
 except for
 
 the irresistible-impulse doctrine.
 

 Id.
 

 at (¶ 17) ("Nothing ...
 
 save
 
 the irresistible-impulse doctrine ...." (emphasis added) ). The court reasoned that the irresistible-impulse doctrine imposes a higher degree of responsibility because of the nature of the act, and stated: "this principle extends to
 
 medical-malpractice
 
 claims."
 

 Id.
 

 at (¶¶ 17-18) (emphasis added). Accordingly, the supreme court held that "[i]n such a case,"-being one for medical malpractice-"the plaintiff must show that the defendant committed an intentional act that led to an irresistible impulse to commit suicide in order to prevail."
 

 Id.
 

 at (¶ 19). The majority, however, conflates
 
 Truddle
 
 's requirement that the claimant plead an intentional act or intentional conduct with a claim for merely an intentional tort and removes it from the scope of the medical-malpractice statute.
 

 ¶ 65. In the instant case, Collins amended the complaint in order to comply with the legal standard set forth in
 
 Truddle
 
 -specifically, the pleading requirements. Again,
 

 to recover against a third party for a decedent's suicide, ... a plaintiff must
 
 plead
 
 and prove: (1) the decedent was under an irresistible impulse rendering him or her unable to discern the nature or consequences of suicide, and (2) the irresistible impulse was proximately caused by the defendant's
 
 intentional conduct
 
 .
 

 Id.
 

 at 696
 
 (¶ 12) (emphasis added). As such, Collins's amended complaint alleged that Dr. Madakasira's intentional conduct of engaging with Irby's conservators, executing an affidavit, and testifying in court
 proceedings to obtain a divorce against Irby's wishes created an irresistible impulse in Irby to commit suicide and thus constituted medical malpractice.
 
 Truddle
 
 does not require the claimant to plead and prove that the defendant intended the decedent to commit suicide. Rather,
 
 Truddle
 
 requires that the claimant plead and prove the intentional conduct the defendant engaged in that created the irresistible impulse in the decedent to commit suicide-thereby committing medical-malpractice.
 

 ¶ 66. The supreme court in
 
 Truddle
 
 unequivocally stated that the irresistible-impulse doctrine's heightened pleading requirements apply to medical-malpractice claims.
 

 Id.
 

 at 697
 
 (¶¶ 17-18).
 
 Truddle
 
 did not bar medical-malpractice actions arising from an individual's suicide, nor did it characterize the action as simply an intentional tort. Rather, the court repeatedly discussed the irresistible-impulse doctrine in the context of medical-malpractice claims and found that it did in fact apply in medical-malpractice claims: "[T]his principle extends to medical-malpractice claims."
 

 Id.
 

 at (¶ 18). As such, Collins's intentional-act claim is a medical-malpractice claim-to which the statute of limitations that governs medical-malpractice claims applies: two years.
 

 ¶ 67. In
 
 Truddle
 
 , the trial court granted summary judgment for the defendants due to the plaintiff's failure to "plead[ ] ... [or] create a genuine issue of material fact as to any wrongful act committed by the defendant that caused [the decedent] to commit suicide."
 

 Id.
 

 at 695
 
 (¶ 8). That is not the case here. Collins's amended complaint pled with specificity the alleged intentional acts of Dr. Madakasira that allegedly created an irresistible impulse in Irby to commit suicide-a claim that
 
 Truddle
 
 characterizes as one of medical malpractice. Whether there is truth or merit to Collins's claim is not before this Court. Rather, the issue is whether the claim falls under a one-year statute of limitations or a two-year statute of limitations. Because the supreme court has very clearly categorized the claim as one for medical malpractice, it is equally clear that the statute of limitations governing medical-malpractice claims applies.
 

 ¶ 68. Again, our law is clear that a two-year statute of limitations applies to medical-malpractice claims. Section 15-1-36(2) provides:
 

 For any claim accruing on or after July 1, 1998, and except as otherwise provided in this section, no claim in tort may be brought against a licensed physician, osteopath, dentist, hospital, institution for the aged or infirm, nurse, pharmacist, podiatrist, optometrist[,] or chiropractor for injuries or wrongful death arising out of the course of medical, surgical[,] or other professional services unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered, and ... in no event more than seven (7) years after the alleged act, omission or neglect occurred.
 

 ¶ 69. In determining whether the two-year medical-malpractice statute of limitations applies, this Court has previously stated: "the main issue [is] whether the tort arises out of the course of medical, surgical[,] or other professional services."
 
 Chitty v. Terracina
 
 ,
 
 16 So.3d 774
 
 , 779 (¶ 12) (Miss. Ct. App. 2009). Here, it is clear that the conduct of Dr. Madakasira-which Collins alleged created the irresistible impulse in Irby to commit suicide and served as the basis for the tort claim-arose out of the course of professional psychiatric care rendered by Dr. Madakasira. Dr. Madakasira, in the course and scope of care as Irby's psychiatrist, met with Irby's conservators, executed an affidavit,
 and testified in court proceedings regarding Irby's best interests in terms of his mental health. In
 
 Chitty
 
 , this Court further stated that where the tort claim arises out of the course of medical, surgical, or other professional services, "whether [the medical provider's] alleged actions were intentional, or merely negligent, is not determinative."
 

 Id.
 

 The majority now departs from that reasoning, finding that intentional conduct cannot serve as the basis for a medical-malpractice action. Moreover, in doing so, the majority departs from the supreme court's explicit and repetitive characterization of the action in the instant case as one for medical malpractice.
 

 ¶ 70. Nothing in
 
 Truddle
 
 characterizes the cause of action as simply an intentional tort or removes the action from the medical-malpractice statute and its governing statute of limitations. The majority erroneously interprets
 
 Truddle
 
 as characterizing a claim against a physician for a patient's suicide as nothing more than an intentional tort. Rather,
 
 Truddle
 
 consistently characterizes the action as one for medical malpractice-to which a two-year statute of limitations applies.
 

 ¶ 71. The majority states that, "If Irby's death had not been the result of suicide, we would agree with the dissent that the medical-negligence action could be sustained." Citing
 
 Truddle
 
 , the majority reasons this is because "suicide constitutes 'an independent, intervening[,] and superseding event that severs the causal nexus between any wrongful action' " of Dr. Madakasira and Irby's death. This reasoning, however, conveniently omits the supreme court's qualifier to the foregoing statement, and thus patently ignores the supreme court's exception to this rule: the irresistible-impulse doctrine. "Nothing in Mississippi caselaw,
 
 save the irresistible-impulse doctrine
 
 , abrogates the general rule that suicide constitutes 'an independent, intervening and superseding event that severs the causal nexus between any wrongful action on the part of the defendant.' "
 

 Id.
 

 (emphasis added). "[T]he irresistible-impulse doctrine applie[s] as
 
 an exception
 
 to the general rule regarding suicide ...."
 

 Id.
 

 (emphasis added). It is an exception that applies to the instant medical-malpractice case.
 

 ¶ 72. The majority states that Collins's "suicide action must be based on an intentional tort" and thus, her "negligence claims do not state a cause of action for which relief can be granted and were correctly dismissed." Again, as discussed, the supreme court rejected this argument in
 
 Singing River
 
 . Both Collins's negligence claim and intentional-act claim are medical-malpractice claims. As such, it is unnecessary to apply the savings statute in the instant case, as both claims were already timely under the medical-malpractice statute of limitations.
 

 ¶ 73. While I do not consider the merits of Collins's complaint, I do find that both Collins's claims-in accordance with
 
 Truddle
 
 and
 
 Singing River
 
 -were for medical malpractice. As such, I believe Collins's medical-malpractice claims were subject to a two-year statute of limitations. Therefore, I would also reverse and remand for this reason, notwithstanding the majority's application of the minor's saving statute. For the foregoing reasons, I respectfully dissent.
 

 IRVING, P.J., CARLTON AND WESTBROOKS, JJ., JOIN THIS OPINION.