MAXWELL, JUSTICE, DISSENTING:
 

 ¶ 31. There is no dispute that what happened to the Vermilyea family was tragic-that
 much is without question. But our duty as an appellate court, reviewing the dismissal of their related lawsuit, is to specifically answer whether it is
 
 actionable
 
 under our current law. And after review, I find that it simply is not. This court made very clear in
 
 Truddle
 
 that in
 
 Mississippi
 
 allegations of medical negligence are "not sufficient to sustain a cause of action for suicide."
 
 Truddle v. Baptist Mem'l Hospital-DeSoto, Inc.
 
 ,
 
 150 So.3d 692
 
 , 697 (Miss. 2014). Instead-as Chief Justice Waller explained when authoring the
 
 Truddle
 
 majority-"[i]n such a case, the plaintiff must show that the defendant committed an intentional act that led to an irresistible impulse to commit suicide in order to prevail"-something the Vermilyeas have not alleged occurred.
 

 Id.
 

 ¶ 32. Despite this, the majority holds
 
 Truddle
 
 does not apply. Instead, the majority imposes the same duty as in
 
 Mississippi Department of Mental Health v. Hall
 
 ,
 
 936 So.2d 917
 
 (Miss. 2006). I find this approach problematic. The first problem with the majority's reliance on
 
 Hall
 
 is that
 
 Hall
 
 was not a suicide case. And the second and more important difference is that, unlike this case,
 
 Hall
 
 involved a patient civilly committed to a state psychiatric hospital. So the duty that hospital owed that patient was one "statutorily mandated" under Mississippi Code Section 41-21-102.
 
 Hall
 
 ,
 
 936 So.2d at 922
 
 . Furthermore, the standard adopted in
 
 Hall
 
 was aimed directly at defining the scope of those particular statutory duties.
 
 See
 
 id.
 

 ¶ 33. The same is true for
 
 Carrington v. Methodist Medical Center, Inc.
 
 ,
 
 740 So.2d 827
 
 (Miss. 1999), and
 
 Mississippi State Hospital v. Wood
 
 ,
 
 823 So.2d 598
 
 (Miss. Ct. App. 2002). In those cases, the patients did commit suicide. But, as in
 
 Hall
 
 , the patients' self-harming acts occurred
 
 while they were civilly committed
 
 . So the hospitals in each case owed the same statutory duties under Section 41-21-102.
 
 [4]
 

 ¶ 34. On a similar note, the other cases the majority cites,
 
 Lyle
 
 and
 
 Copac
 
 , involved inpatient treatment by private facilities-private facilities that
 
 expressly assumed
 
 the duty to provide custodial care of clients they knew posed a danger to themselves.
 
 Lyle v. Johnson
 
 ,
 
 240 Miss. 154
 
 , 160-62,
 
 126 So.2d 266
 
 , 268-69 (1961) (addressing the plaintiff's claim that a private sanitarium owed her mother heightened duties based on the admission contract);
 
 Cahn v. Copac, Inc.
 
 ,
 
 198 So.3d 347
 
 , 361 (Miss. Ct. App. 2015) (noting an inpatient drug-treatment facility, though "not obligated to admit or provide medical care and treatment," "assumed this obligation when it accepted payment and admitted him to the facility").
 

 ¶ 35.
 
 Truddle
 
 recognized custodial control as the key distinction. Just as in this case, the wrongful-death beneficiary in
 
 Truddle
 
 argued that
 
 Hall
 
 ,
 
 Carrington
 
 ,
 
 Wood
 
 , and
 
 Lyle
 
 all supported the hospital's potential liability for the alleged role medical negligence played in her son's suicide, which he committed after he was discharged. But this Court recognized her reliance on this line of cases was misplaced, because "the cases [she] cited involve[d] patients committing suicide or injuring themselves
 
 in the custody and control of the facility
 
 [.]"
 
 Truddle
 
 ,
 
 150 So.3d at 697-98
 
 (emphasis added).
 

 ¶ 36. The majority here concedes that Randy was not in the custody and control
 of the hospital when he committed suicide. And yet it still insists
 
 Truddle
 
 does not apply. While the majority likens this case to
 
 Lyle
 
 , unlike the sanitarium patient in that case, there is no allegation Randy "escaped" from the hospital and committed suicide. Instead, the complaint alleges Randy committed suicide after being released following treatment.
 

 ¶ 37. I do sympathize with what the majority is doing. In the face of such tragedy, speculation easily arises about what might have been prevented had the hospital assumed custody and control of Randy and forcefully kept him in its care. But wishing the hospital had assumed custody and control, in light of what happened after his discharge, does not give rise to a duty on the hospital's behalf. Nor is it a sound legal reason to create a new duty to assume custody and control-which is essentially what the majority does.
 

 ¶ 38. Based on the facts as alleged in the complaint, Randy was not under the custody and control of the hospital when he committed suicide. So
 
 Truddle
 
 applies. And
 
 Truddle
 
 emphasizes that, even if the hospital was negligent in its treatment of Randy, "this failure alone is not sufficient to sustain a cause of action for a suicide."
 
 Truddle
 
 ,
 
 150 So.3d at 697
 
 .
 

 ¶ 39. Therefore, based on our current precedent, I dissent.
 

 COLEMAN AND BEAM, JJ., JOIN THIS OPINION.
 

 In fact, the sole issue in
 
 Carrington
 
 was whether the defendant hospital was immune under the civil-commitment act.
 
 Carrington
 
 ,
 
 740 So.2d at 828
 
 ("We granted the petition for writ of certiorari to address a question of broad public importance in regard to the proper interpretation of
 
 Miss. Code Ann. § 41-21-105
 
 (1993), which governs liability for actions taken during commitment of patients for mental treatment.").