# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01759-COA

**GRAHAM READ IRBY, A MINOR, BY AND THROUGH KAREN COLLINS, MOTHER AND NEXT FRIEND**                                                APPELLANT

v.

**SUDHAKAR MADAKASIRA, M.D. AND PSYCAMORE, LLC**                                                APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 08/24/2015 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN W. CHRISTOPHER |
| | WILLIAM P. FEATHERSTON JR. |
| ATTORNEYS FOR APPELLEES: | CLIFFORD B. AMMONS |
| | CLIFFORD BARNES AMMONS JR. |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| TRIAL COURT DISPOSITION: | GRANTED APPELLEES' MOTION TO DISMISS |
| DISPOSITION: | AFFIRMED - 03/28/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**BARNES, J., FOR THE COURT:**

¶1.     Graham Read Irby, by and through his mother, Karen Collins, filed a wrongful-death suit against the psychiatrist who treated his father, Stuart M. Irby (Irby), prior to Irby's death by suicide.  The suit alleged the psychiatrist's intentional and negligent acts created an irresistible impulse in Irby to commit suicide.  The circuit court dismissed the action, finding that the claims of intentional acts were barred by the one-year statute of limitations for intentional torts and that Irby's suicide was a superseding event that barred any negligence

claims. On appeal, Collins argues that despite allegations of intentional acts, the complaint was based in negligence, for which a two-year statute of limitations applies, and the negligence action is not barred. Finding the circuit court correctly dismissed the complaint, we affirm.

**FACTS**

¶2. Prior to his death, Irby sought psychiatric treatment from Dr. Sudhakar Madakasira, a physician specializing in psychiatry. Dr. Madakasira treated Irby for various conditions, including bipolar disorder, anger management, and alcohol abuse. On February 11, 2009, Irby and his wife, Karen Irby, now Karen Collins, were involved in a car accident. Irby suffered a severe, traumatic frontal-lobe brain injury. He continued to see Dr. Madakasira for the brain injury.

¶3. Due to that injury, Irby was deemed incapable of conducting his own business affairs, and coconservators were appointed by the Hinds County Chancery Court, First Judicial District. The conservators petitioned the chancery court for authority to file a divorce complaint on Irby's behalf against Collins. The petition was granted. In support of the divorce complaint, the conservators attached an affidavit executed by Dr. Madakasira on October 28, 2011, while Irby was under his care. The affidavit stated that Irby had told Dr. Madakasira that he was unsure if he wanted a divorce from Collins. However, Dr. Madakasira swore in his affidavit that due to the brain injury, Irby was not capable of making a decision in his or Graham's best interest regarding the divorce. Dr. Madakasira opined that a divorce was in Irby's best interest and that it would be detrimental to Irby's health to

2

remain married to Collins. Dr. Madakasira testified consistently at the divorce hearing. Although Irby testified he did not want a divorce, the divorce was granted.

¶4. On January 17, 2012, Irby told Collins, over the phone, that he was forced into the divorce and had no reason to live. Irby committed suicide at his home later that day.

¶5. On December 16, 2013, Collins sent Dr. Madakasira and his employer, Psycamore LLC, a notice of intent to commence a medical-malpractice action based on wrongful death. *See* Miss. Code Ann. § 15-1-36(15) (Rev. 2012) (requiring at least sixty days' prior written notice of intent to begin a professional-negligence claim against healthcare providers). On March 17, 2014, Collins filed her complaint in Hinds County Circuit Court, First Judicial District. The complaint alleged that Dr. Madakasira and Psycamore, through the doctrine of respondeat superior, negligently caused Irby's death by suicide. It was later determined that the proper venue was Rankin County, and an agreed order was entered transferring the case to Rankin County Circuit Court.

¶6. After the case was transferred, Collins was granted leave to file an amended complaint. The amended complaint alleged negligence and added a claim for "intentional acts." The amended portion of the complaint alleged that "[a]s a direct and proximate result of the intentional acts of Dr. Madakasira in assisting the conservators in the prosecution of the divorce action and the granting of a divorce by the Chancery Court[,] Stuart M. Irby developed an irresistible impulse to commit suicide[.]"

¶7. Dr. Madakasira moved to dismiss the case on the grounds that the one-year statute of limitations for intentional torts barred the action and that any negligence claims were barred

for failure to state a claim upon which relief can be granted. After a hearing, the circuit court granted the motion to dismiss. Collins's motion for reconsideration was denied. Collins appeals, arguing that the two-year statute of limitations for professional negligence applies and that the case should be reversed and remanded for discovery and further proceedings.

## STANDARD OF REVIEW

¶8.     The application of the correct statute of limitations is a question of law, which we review de novo. *Lyas v. Forrest Gen. Hosp.,* 177 So. 3d 412, 416 (¶18) (Miss. 2015). We also review de novo a trial court's decision to grant a motion to dismiss under Mississippi Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted. *Stockstill v. State*, 854 So. 2d 1017, 1019-20 (¶4) (Miss. 2003). When considering a Rule 12(b)(6) motion to dismiss, "the allegations in the complaint must be taken as true, and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of her claim." *Stockstill*, 854 So. 2d at 1020 (¶4).

## DISCUSSION

### I.      Whether Collins's wrongful-death complaint is barred by the one-year statute of limitations for intentional torts.

¶9.     The applicable statute of limitations in "a wrongful[-]death action is adopted from the statute of limitations that governs the tort that caused the death." *Tolliver ex rel. Wrongful Death Beneficiaries of Green v. Mladineo*, 987 So. 2d 989, 996 (¶17) (Miss. Ct. App. 2007) (citing *Lee v. Thompson*, 859 So. 2d 981, 990 (¶21) (Miss. 2003)). The statute of limitations for medical malpractice is two years. *Id.*; Miss. Code Ann. § 15-1-36(2) (Rev. 2012). Intentional torts not within the medical-malpractice statute, however, are subject to a

4

one-year statute of limitations.  Miss. Code Ann. § 15-1-35 (Rev. 2012).[1]

¶10.    Collins's original complaint alleged medical negligence.  In November 2014, after Collins's complaint was filed, the Mississippi Supreme Court handed down its decision in *Truddle v. Baptist Memorial Hospital-DeSoto Inc.*, 150 So. 3d 692 (Miss. 2014).  Both sides agree that *Truddle* controls this case.  *Truddle* held that "to sustain a cause of action for a suicide . . . , the plaintiff must show that the defendant committed an *intentional act* that [proximately caused] an irresistible impulse [in the decedent] to commit suicide[.]"  *Id.* at 697 (¶19) (emphasis added) (citing *State ex rel. Richardson v. Edgeworth*, 214 So. 2d 579, 586-88 (Miss. 1968)).  This is an exception to common law, which prohibited recovery for wrongful death by suicide, as "suicide is an 'unforeseeable, intervening cause[,] which breaks the causal connection between the wrongful act and the death.'"  *Id.* at 695 (¶11) (quoting *Edgeworth*, 214 So. 2d at 586).

¶11.    To comply with *Truddle's* intentional-act pleading requirement, Collins moved for, and was granted, leave to amend the complaint.  The pertinent section of the amended complaint reads:

<u>INTENTIONAL ACTS OF DEFENDANT</u>

. . . .

15.    Dr. Madakasira knowingly engaged in a course of conduct with the

---

[1] "All actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words concerning the person or title, for failure to employ, and for libels, shall be commenced within one (1) year next after the cause of such action accrued, and not after." Miss. Code Ann. § 15-1-35. "[T]he proscription of the statute necessarily extends beyond the tort labels specifically appearing," and applies to all "substantially like" intentional torts "for which no specific statute has been provided." *City of Mound Bayou v. Johnson*, 562 So. 2d 1212, 1218 (Miss. 1990).

conservators of Stuart M. Irby to have a divorce granted to Irby by the action prosecuted by the conservators even though Stuart Irby expressed his opposition to the divorce. By advising with the conservators in the divorce action, which resulted in a divorce being granted, Dr. Madakasira stepped outside of the psychiatrist-patient relationship and created a conflict of interest with his patient, Stuart Irby. As Irby's attending psychiatrist for several years, Dr. Madakasira knew that Stuart Irby was mentally and emotionally fragile and that he had threat[en]ed to commit suicide in the past. However, notwithstanding his personal knowledge of lrby's mental condition[,] Dr. Madakasira intentionally participated with the conservators to secure a divorce for Stuart Irby from his wife, [Collins,] and took an active part in the chancery court proceedings which resulted in the divorce being granted against Stuart Irby's will.

16. As a direct and proximate result of the intentional acts of Dr. Madakasira in assisting the conservators in the prosecution of the divorce action and the granting of a divorce by the Chancery Court[,] Stuart M. Irby developed an irresistible impulse to commit suicide and on January 17, 2012[,] he committed suicide.

17. The intentional conduct of Dr. Madakasira, as aforesaid, created an irresistible impulse in Stuart Irby to commit suicide so that he took his own life. Based upon the negligence and intentional acts of the defendants it was foreseeable that Stuart M. Irby would commit suicide.

18. Madakasira's intentional conduct, as aforesaid, was the proximate cause or a proximate contributing cause of the irresistible impulse suffered by Stuart M. Irby to commit suicide and rendered him unable to discern the nature or consequences of suicide which was the proximate cause or was a proximate contributing cause of Stuart Irby's wrongful death.

¶12. The trial court found the allegations in the amended complaint sounded in intentional tort, for which a one-year statute of limitations applies, barring the claims. Collins argues that notwithstanding the pleading of intentional acts, the claims are based in medical negligence, for which the two-year statute of limitations applies. Collins argues that an "intentional act" is not the same as an "intentional tort," and the trial court confused the two terms. Rather, Collins argues that "[t]his is a medical[-]negligence case in which an

6

intentional act serves as a basis for the malpractice[.]" That is, Collins asserts the amended complaint alleges one cause of action—negligence for medical malpractice—which is based, in part, on Dr. Madakasira's intentional acts of executing the affidavit and testifying at the divorce trial.

¶13.　However, despite Collins's assertion that the claims lie in negligence, an intentional act cannot form the basis of a negligence claim. "Negligence is a failure to do what [a] reasonable person would do under the same or similar circumstances," resulting in a breach of the applicable standard of care and injury to the plaintiff. *Estate of St. Martin v. Hixson*, 145 So. 3d 1124, 1128 (¶9) (Miss. 2014). Intent "denotes that the actor desires to cause the consequences of his act." *S. Farm Bureau Cas. Ins. v. Allard*, 611 So. 2d 966, 968 (Miss. 1992) (quoting Restatement (Second) of Torts § 8A(a) (1965)). Intentional behavior designed to bring about the plaintiff's injury forms the basis of an intentional tort, *id.*, and "an intentional tort cannot be committed negligently." *Jordan v. Wilson*, 5 So. 3d 442, 447 (¶18) (Miss. Ct. App. 2008).

¶14.　"[A] claim alleging an intentional tort and a claim alleging negligence are mutually exclusive, in that, one who is found to have acted negligently cannot at the same time be found to have acted intentionally." *Id.* While our law permits a party to allege inconsistent claims based on negligence and intentional tort, *id.* at 448 (¶19); M.R.C.P. 8, this is not what Collins alleges. Rather, Collins alleges that Dr. Madakasira's intentional acts serve as the basis for the negligence claim. There is no basis in our law to support this argument. *See Jordan*, 5 So. 3d at 447-48 (¶¶18-19).

7

¶15.    Regardless of the title Collins gives the allegations, we must look to their substance to determine whether the claims lie in negligence or intentional tort. *See Howard v. Wilson*, 62 So. 3d 955, 956 (¶6) (Miss. 2011). "There can be no escape from the bar of the statute of limitations applicable to intentional torts by the mere refusal to style the cause brought in a recognized statutory category and thereby circumvent prohibition of the statute." *Id.* at 956-57 (¶¶6-9) (finding the plaintiff could not circumvent the statute of limitations for an intentional tort by alleging that the defendant "negligently attacked [her] with a pair of scissors").

¶16.    Our supreme court recently reiterated this principle in *Sanderson Farms Inc. v. McCullough*, 2015-IA-00854-SCT, 2017 WL 454994 (Miss. Feb. 2, 2017). The supreme court held that while McCullough's complaint alleged negligence, for which a three-year statute of limitations applied, the court was "not bound by the claims set forth in his petition." *Id.* at *3 (¶13). Rather, "the law of the state is realistic. Substance prevails over form." *Id.* "The question . . . is whether the *substance* of McCullough's claim . . . sounds in intentional tort or negligence." *Id.* The court again noted that our law is "clear that the principal difference between an intentional tort and negligence is that 'an intentional tort is an act of intentional behavior designed to bring about the injury[.]'" *Id.* at *4 (¶18) (quoting *Peaster v. David New Drilling Co.*, 642 So. 2d 344, 349 (Miss. 1994)). Negligence, however, "simply requires that the defendant failed to act as a reasonable person would under the same or similar circumstances, thereby breaching the applicable standard of care." *Id.*

¶17.    Collins's amended complaint alleges the following intentional acts: "Dr. Madakasira

8

intentionally participated with the conservators to secure a divorce for . . . Irby from his wife, [Collins,] and took an active part in the chancery court proceedings which resulted in the divorce being granted against . . . Irby's will," and this "intentional conduct . . . created an irresistible impulse in . . . Irby to commit suicide." The first sentence of the punitive-damages section of the complaint states, "Dr. Madakasira[] willfully, deliberately[,] and intentionally participated in the divorce proceedings against the will and wishes of . . . Irby[,] which resulted in a divorce which Mr. Irby did not want and resulted in Mr. Irby being forced to divorce his wife against his will."

¶18.    The allegations in the amended complaint that Dr. Madakasira acted "knowingly," "intentionally," "active[ly]," willfully," and "deliberately," sound in intentional tort, regardless of the title Collins gives them.[2] We further find that Collins's intentional-tort claims do not state a claim for medical malpractice. A medical-malpractice claim must "aris[e] out of the course of medical, surgical[,] or other professional services[.]" Miss. Code Ann. § 15-1-36(2). The amended complaint, under the section titled "INTENTIONAL ACTS OF DEFENDANT," states that "[b]y advising with the conservators in the divorce action, which resulted in a divorce being granted, Dr. Madakasira *stepped outside of the psychiatrist-patient relationship* and created a conflict of interest with his patient, Stuart Irby." (Emphasis added). As Collins alleges Dr. Madakasira's intentional acts were committed "outside of the psychiatrist-patient relationship," not arising out of the course of

---

[2] While not titled as such, the claims sound akin to intentional infliction of emotional distress, which "is of like kind or classification as the torts enumerated in . . . [s]ection 15-1-35[.]" *Jones v. Fluor Daniel Servs. Corp.*, 32 So. 3d 417, 425 (¶36) (Miss. 2010).

9

it, the intentional-act allegations do not fall within the medical-malpractice statute.

¶19. Looking at the substance of the amended complaint, we find the alleged intentional acts lie in intentional tort, for which the one-year statute of limitations in section 15-1-35 applies. Collins cannot avoid the one-year statute of limitations by claiming the alleged intentional acts are negligence under the medical-malpractice statute. *See McCullough*, 2017 WL 454994, at *3 (¶13); *Howard*, 62 So. 3d at 957 (¶¶9-10). Irby committed suicide on January 17, 2012. Collins's complaint was filed on March 17, 2014, and the amended complaint was filed on March 3, 2015. Collins's intentional-tort claims are barred by the one-year statute of limitations.

## II. Whether Collins can sustain a negligence cause of action for Irby's suicide.

¶20. To the extent that Collins's complaint alleges negligence, we find these claims were correctly dismissed. Collins makes the following negligence allegations in the amended complaint: (1) Dr. Madakasira "[f]ail[ed] to properly monitor [Irby's] mental health"; and (2) Dr. Madakasira "[f]ail[ed] to prescribe an appropriate treatment for . . . Irby to prevent his suicide in spite of the fact that Dr. Madakasira was well aware of Irby's history and his suicidal ideations." However, under *Truddle*, a wrongful-death action for suicide cannot be sustained solely based on allegations of "medical malpractice, i.e., negligence." *Truddle*, 150 So. 3d at 697 (¶15).[3]

---

[3] The supreme court discussed an exception to its finding in *Truddle* for cases where the decedent was under the defendant's custody and control, such as in a mental facility. *Truddle*, 150 So. 3d at 697-98 (¶¶20-22). We do not address the exception here, as there is no allegation that Irby was under Dr. Madakasira's or Psycamore's custody or control.

10

¶21.  "A medical-malpractice cause of action in Mississippi tracks the typical negligence action[.]" *Id.* at (¶16).  The plaintiff must prove: "(1) the existence of a duty by the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) a failure to conform to the required standard; and (3) an injury to the plaintiff proximately caused by the breach of such a duty by the defendant." *Id.* (quoting *Johnson v. Pace*, 122 So. 3d 66, 68 (¶8) (Miss. 2013)).  In proving these elements, the plaintiff must show "a *causal connection* between the breach and the [injury], such that the breach is the proximate cause of the [injury]." *Double Quick Inc. v. Lymas*, 50 So. 3d 292, 298 (¶30) (Miss. 2010) (emphasis added).

¶22.  However, "suicide constitutes 'an independent, intervening[,] and superseding event that severs the causal nexus between any wrongful action on the part of the defendant.'" *Truddle*, 150 So. 3d at 697 (¶17) (quoting *Shamburger v. Grand Casino of Miss. Inc./Biloxi*, 84 F. Supp. 2d 794, 798 (S.D. Miss. 1998)).  "[A] rebuttable presumption exists 'that a person will not destroy himself by suicide.'" *Id.* at 695 (¶11) (quoting *Edgeworth*, 214 So. 2d at 585).  The *Edgeworth* court stated that recovery for a wrongful suicide death is permissible only when the defendant committed an intentional act that created "an irresistible impulse in the decedent to take his or her own life." *Id.* (citing *Edgeworth*, 214 So. 2d at 586-88).  It held that "where the suicide is committed in response to an uncontrollable impulse, recovery may be had if the mental state of [the] deceased was substantially caused by the defendants' intentional wrongful acts." *Edgeworth*, 214 So. 2d at 587.  In recognizing this exception to the common-law rule barring recovery for suicide, "[t]he *Edgeworth* [c]ourt

11

reasoned that intentional acts which cause an irresistible impulse to commit suicide should be compensable because 'a higher degree of responsibility is imposed upon a wrongdoer whose conduct was intended to cause harm than upon one whose conduct was negligent.'" *Id.* at 696 (¶11) (quoting *Edgeworth*, 214 So. 2d at 587). "[T]his principle extends to medical-malpractice claims." *Id.* at 697 (¶18).

¶23. "Nothing in Mississippi caselaw, save the irresistible-impulse doctrine, . . . abrogates the general rule that suicide constitutes 'an independent, intervening[,] and superseding event that severs the causal nexus between any wrongful action on the part of the defendant.'" *Id.* at (¶17). As stated by the United States District Court for the Northern District of Mississippi, "[a]pplying the substantive law of the State of Mississippi, a claim for wrongful suicide death can be maintained only where it can be shown that as a result of defendant's intentional torts, decedent acted under an irresistible impulse in committing suicide." *Hare v. City of Corinth*, 814 F. Supp. 1312, 1326 (N.D. Miss. 1993) (vacated and remanded on other grounds, 74 F.3d 633 (5th Cir. 1996)). The holding in *Truddle* specifically extended this principle to medical-malpractice claims. *Truddle*, 150 So. 3d at 697 (¶18).

¶24. Therefore, under *Truddle*, while a claim for wrongful suicide death under the irresistible-impulse doctrine set out in *Edgeworth* may be sustained based on a doctor's actions, the claim cannot lie in medical negligence. *Id.* at (¶17).[4] While *Truddle* discusses

---

[4] In finding that the irresistible-impulse doctrine extends to medical-negligence claims, the supreme court cited *Haney v. River Oaks Hospital*, 2006-CA-00219-SCT (Order, May 17, 2007), which involved "a medical-negligence action against a doctor and hospital where a patient committed suicide after being released from the hospital over her family's objections." *Truddle*, 150 So. 3d at 697 (¶18). The supreme court noted that it affirmed per curiam the finding of summary judgment in favor of the doctor and hospital. *Id.*

a possible exception for circumstances where the decedent was under the custody and control of a physician or facility, such as a mental institution, that exception does not apply here. *Id.* at 697-98 (¶¶20-22). Therefore, the claim must stem from an intentional tort. *Id.* Because the suicide action must be based on an intentional tort, Collins's negligence claims do not state a cause of action for which relief can be granted and were correctly dismissed.

¶25. We disagree with the dissent's finding that *Truddle* permits a medical-negligence cause of action for Irby's suicide death. First, *Truddle* clearly states that an intentional act must be pled to support a cause of action for suicide, and our caselaw is well established that an intentional act cannot form the basis of a negligence claim. *Truddle*, 150 So. 3d at 697 (¶19); *Jordan*, 5 So. 3d at 447 (¶18). Second, a medical-negligence claim cannot be sustained based on Irby's suicide because "suicide constitutes 'an independent, intervening[,] and superseding event that severs the causal nexus between any wrongful action'" of Dr. Madakasira and Irby's death. *Truddle*, 150 So. 3d at 697 (¶17) (quoting *Shamburger*, 84 F. Supp. 2d at 798). If Irby's death had not been the result of suicide, we would agree with the dissent that the medical-negligence action could be sustained. However, based on the facts presented, there is no negligence cause of action for which relief can be granted.

¶26. We also disagree with the dissent's statement that our decision effectively holds "that intentional conduct cannot serve as the basis for a medical-malpractice action," which the dissent points out is contrary to our holding in *Chitty v. Terracina*, 16 So. 3d 774 (Miss. Ct. App. 2009). In *Chitty*, we held that whether a doctor's "alleged actions were intentional, or merely negligent, is not determinative" of whether a claim falls under the medical-

13

malpractice statute; rather, "the main issue" is "whether the tort arises out of the course of medical, surgical or other professional services." *Id.* at 779 (¶12).[5] We do not stray from that decision. We acknowledge that the plain language of our medical-malpractice statute encompasses all applicable torts against physicians; it is not limited to the tort of negligence. The statute specifically states that *"no claim in tort* may be brought against a licensed physician . . . [for] wrongful death arising out of the course of medical, surgical or other professional services unless it is filed within two (2) years[.]" Miss. Code Ann. § 15-1-36(2) (emphasis added).[6] Regardless, the issue before us is not whether an intentional tort can form the basis of a medical-malpractice claim. The issue here is which statute of limitations applies to the allegations in the complaint—the two-year medical-malpractice statute of limitations set out in section 15-1-36, or the one-year intentional-tort statute of limitations

---

[5] The two statutes of limitation discussed in *Chitty* were the medical-malpractice statute and Mississippi Code Annotated section 15-1-49(1) (Rev. 2003), which provides a three-year limitations period for claims for which no other statute of limitations applies. *Chitty*, 16 So. 3d at 777 (¶7). The plaintiff in *Chitty* categorized her claim against her doctor as a "business dispute," rather than medical malpractice, and argued that the general three-year statute of limitations in section 15-1-49(1) applied. However, because the dispute ("alleged fraudulent billing conduct and falsification of records and invoices" resulting from an allegedly unnecessary medical procedure) arose out of the course of the defendant's professional services, we found the more specific two-year medical-malpractice statute of limitations controlled. *Chitty*, 16 So. 3d at 779-80 (¶14).

[6] We note that the medical-malpractice statute also states that "[n]o action based upon the health care provider's *professional negligence* may be begun unless the defendant has been given at least sixty (60) days' prior written notice of the intention to begin the action." Miss. Code Ann. § 15-1-36(15) (emphasis added). Either this means that notice is only required for negligence claims, or that only negligence actions can be brought under the medical-malpractice statute. However, this issue has not been decided by our supreme court, and it is unnecessary to address it here.

14

set out in section 15-1-35.[7]  As stated, the negligence allegations cannot be sustained, as the suicide severed the proximate cause between Dr. Madakasira's alleged negligent actions and Irby's death.  Further, the intentional acts were alleged to have occurred outside the scope of Dr. Madakasira's treatment, removing the intentional-tort allegations from the scope of the medical-malpractice statute.  Thus, the one-year intentional-tort statute of limitations applies, barring Collins's claims.

¶27.     Taking the allegations in the complaint as true, Collins's medical-negligence allegations do not state a claim upon which relief can be granted.  Suicide is an independent, intervening, and superseding event that breaks the nexus between any alleged wrongful act of Dr. Madakasira and Irby's death.  Without this nexus, a causal connection for a medical-negligence action cannot be formed, and the claims cannot be sustained.  The trial court correctly dismissed the negligence allegations in the complaint.

_____

[7] The dissent assumes, without citation of authority, that the medical-malpractice statute of limitations would automatically apply to an alleged intentional-tort action arising out of medical malpractice.  We are not so sure.  In such a case, there would be a conflict between the medical-malpractice statute of limitations ("claim in tort" arising out of professional services must be brought within two years) and the intentional-tort statute of limitations ("[a]ll actions" for the named intentional torts must be brought within one year).  However, we need not decide this conflict, as Collins's amended complaint admits the intentional conduct was "outside of the psychiatrist-patient relationship."

Further, the dissent points out that the complaint in *Truddle* was filed more than a year after the decedent's suicide death and reasons that the complaint could have only been brought under the two-year medical-malpractice statute of limitations.  Summary judgment was affirmed in *Truddle* based on the plaintiff's failure to plead an intentional wrongful act. *Truddle*, 150 So. 3d at 698 (¶21).  The decision does not address the applicable statute of limitations.  "[T]he statute of limitations is an affirmative defense[,] which must be pled." *Alexander v. Womack*, 857 So. 2d 59, 62 (¶11) (Miss. 2003).  We cannot take the supreme court's decision not to address the statute of limitations as implicitly finding that the two-year statute of limitations applied.

15

## CONCLUSION

¶28.    Under the holding in *Truddle*, Collins's wrongful-death claim for Irby's suicide must lie in intentional tort, for which a one-year statute of limitations applies. *Truddle*, 150 So. 3d at 697 (¶17). Irby committed suicide on January 17, 2012. Collins's original complaint was filed on March 17, 2014, and the amended complaint was filed on March 3, 2015. Collins's intentional-tort claims are barred as both the complaint and amended complaint were filed outside the one-year limitations period. Further, although within the two-year statute of limitations for negligence,[8] Collins's negligence claims are barred for failure to state a claim upon which relief can be granted, as the negligence alleged in the facts of this case cannot form a cause of action for a wrongful suicide death. Therefore, the circuit court correctly dismissed this action. We affirm.

¶29.    **THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

        **GRIFFIS, P.J., ISHEE, WILSON AND GREENLEE, JJ., CONCUR. LEE, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P.J., CARLTON AND WESTBROOKS, JJ. FAIR, J., NOT PARTICIPATING.**

        **LEE, C.J., DISSENTING:**

¶30.    I disagree with the majority's decision in this case that a one-year statute of limitations for intentional torts applies, rather than the two-year statute of limitations for medical-

---

[8] Collins sent a notice-of-claim letter on December 16, 2013, which tolled the statute of limitations for sixty days. *See* Miss. Code Ann. § 15-1-36(15) ("If the notice is served within sixty (60) days prior to the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended sixty (60) days from the service of the notice for said health care providers and others."). Thus, the two-year statute of limitations would have run on March 18, 2014.

malpractice actions. I find that the majority misinterpreted the controlling case, *Truddle v. Baptist Mem'l Hosp.-DeSoto Inc*., 150 So. 3d 692 (Miss. 2014), which unequivocally categorizes the claim at issue as one for medical malpractice. Thus, I respectfully dissent.

¶31. Under Mississippi law, a decedent's suicide is actionable against a third-party defendant as a wrongful-death claim "only if the suicide was proximately caused by the intentional act of the defendant, creating an irresistible impulse in the decedent to take his or her own life." *Id.* at 695 (¶11) (citing *State ex rel. Richardson v. Edgeworth*, 214 So. 2d 579, 585 (Miss. 1968)). I agree with the majority that *Truddle* controls the instant case. In *Truddle*, the Mississippi Supreme Court addressed the irresistible-impulse doctrine as it applies to *medical-malpractice* claims arising from an individual's suicide. Even the majority opinion acknowledges that the *Truddle* case is one of medical malpractice. Yet the majority goes on to find that the one-year statute of limitations for intentional torts applies to this medical-malpractice case. Mississippi law is clear that a two-year statute of limitations applies to medical-malpractice claims. *Estate of Johnson ex rel. Shaw v. Graceland Care Ctr. of Oxford LLC*, 41 So. 3d 692, 695 (¶10) (Miss. 2010).

¶32. In *Truddle*, the supreme court noted that the "crux of [the plaintiff's] argument . . . is that [the decedent's] suicide was the result of medical malpractice, i.e., negligence." *Truddle*, 150 So. 3d. at 696-97 (¶15). The court stated that in medical-malpractice claims the burden is upon the plaintiff to

> prove (1) the existence of a duty by the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) a failure to conform to the required standard; and (3) an injury to the plaintiff proximately caused by the breach of such a duty by the defendant.

17

*Id.* at 697 (¶16). The court went on to recognize that nothing in our caselaw has abolished the rule that suicide constitutes an "independent, intervening[,] and superseding event that severs the causal nexus between any wrongful action on the part of the defendant," *except for* the irresistible-impulse doctrine. *Id.* at (¶17) ("Nothing . . . *save* the irresistible-impulse doctrine . . . ." (emphasis added)). The court reasoned that the irresistible-impulse doctrine imposes a higher degree of responsibility because of the nature of the act, and stated: "Furthermore, this principle extends to *medical-malpractice* claims." *Id.* at (¶¶17-18) (emphasis added). Accordingly, the supreme court held that "[i]n such a [medical-malpractice] case, the plaintiff must show that the defendant committed an intentional act that led to an irresistible impulse to commit suicide in order to prevail." *Id.* at (¶19).

¶33. In the instant case, Collins amended the complaint in order to comply with the legal standard set forth in *Truddle*—specifically, the pleading requirements. Again,

> to recover against a third party for a decedent's suicide, . . . a plaintiff must *plead* and prove: (1) the decedent was under an irresistible impulse rendering him or her unable to discern the nature or consequences of suicide, and (2) the irresistible impulse was proximately caused by the defendant's *intentional conduct*.

*Id.* at 696 (¶12) (emphasis added). As such, Collins's amended complaint alleged that Dr. Madakasira's intentional conduct of engaging with Irby's conservators, executing an affidavit, and testifying in court proceedings to obtain a divorce against Irby's wishes created an irresistible impulse in Irby to commit suicide and thus constituted medical malpractice. *Truddle* does not require the claimant to plead and prove that the defendant intended the decedent to commit suicide. Rather, *Truddle* requires that the claimant plead and prove the

18

intentional conduct engaged in by the defendant that created the irresistible impulse in the decedent to commit suicide.

¶34. According to the briefs and record excerpts in *Truddle*, the trial court in its order granting summary judgment explicitly stated: "This is a medical[-]malpractice[/]wrongful death case[.]" In fact, in *Truddle*, the decedent committed suicide on June 19, 2008. *Id*. at 695 (¶6). The complaint was filed on August 9, 2010. As such, the suit could only have been brought under the two-year statute of limitations applicable in medical-malpractice cases. Furthermore, the supreme court in *Truddle* unequivocally stated that the irresistible-impulse doctrine's heightened pleading requirements apply to medical-malpractice claims. *Id.* at 697 (¶¶17-18). *Truddle* did not bar medical-malpractice actions arising from an individual's suicide, nor did the court characterize the action as an intentional tort. Rather, the court repeatedly discussed the irresistible-impulse doctrine in the context of medical-malpractice claims and found that it did in fact apply in medical-malpractice claims: "[T]his principle extends to medical-malpractice claims." *Id.* at (¶18). As such, the applicable statute of limitations is that governing medical-malpractice claims: two years.

¶35. In *Truddle,* the trial court granted summary judgment for the defendants due to the plaintiffs's failure to "plead[] . . . [or] create a genuine issue of material fact as to any wrongful act committed by the defendant that caused [the decedent] to commit suicide." *Id.* at 695 (¶8). That is not the case here. Collins's amended complaint pled with specificity the alleged intentional acts of Dr. Madakasira that allegedly created an irresistible impulse in Irby to commit suicide—a claim that *Truddle* characterizes as one of medical malpractice.

19

Whether there is truth or merit to Collins's claim is not before this Court. We are tasked only with deciding whether the claim falls under a one-year statute of limitations or a two-year statute of limitations. Because the supreme court has very clearly categorized the claim as one for medical malpractice, it is equally clear that the statute of limitations governing medical-malpractice claims applies.

¶36. Our law is clear that a two-year statute of limitations applies to medical-malpractice claims. Mississippi Code Annotated section 15-1-36(2) (Rev. 2012) provides:

> For any claim accruing on or after July 1, 1998, and except as otherwise provided in this section, no claim in tort may be brought against a licensed physician, osteopath, dentist, hospital, institution for the aged or infirm, nurse, pharmacist, podiatrist, optometrist[,] or chiropractor for injuries or wrongful death arising out of the course of medical, surgical[,] or other professional services unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered, and . . . in no event more than seven (7) years after the alleged act, omission or neglect occurred.

¶37. In determining whether the two-year medical-malpractice statute of limitations applies, this Court has previously stated: "the main issue [is] whether the tort arises out of the course of medical, surgical[,] or other professional services." *Chitty v. Terracina*, 16 So. 3d 774, 779 (¶12) (Miss. Ct. App. 2009). Here, it is clear that conduct of Dr. Madakasira—which Collins alleged created the irresistible impulse in Irby to commit suicide and served as the basis for the tort claim—arose out of the course of professional psychiatric care rendered by Dr. Madakasira. Dr. Madakasira, in the course and scope of care as Irby's psychiatrist, met with Irby's conservators, executed an affidavit, and testified in court proceedings regarding Irby's best interests in terms of his mental health. In *Chitty*, this Court

20

further stated that where the tort claim arises out of the course of medical, surgical, or other professional services, "whether [the medical provider's] alleged actions were intentional, or merely negligent, is not determinative." *Id*. The majority now departs from that reasoning, finding that intentional conduct cannot serve as the basis for a medical-malpractice action. Moreover, in doing so, the majority departs from the supreme court's explicit and repetitive characterization of the action in the instant case as one for medical malpractice.

¶38. Nothing in *Truddle* characterizes the cause of action as an intentional tort or removes the action from the medical-malpractice statute and its governing statute of limitations. The majority erroneously interprets *Truddle* as characterizing a claim against a physician for a patient's suicide as one for an intentional tort. Rather, *Truddle* consistently characterizes the action as one for medical malpractice—to which a two-year statute of limitations applies.

¶39. While I do not consider the merits of Collins's complaint, I do find that Collins's claim—in accordance with *Truddle*—was one for medical malpractice. As such, I believe Collins's medical-malpractice claim was subject to a two-year statute of limitations. Therefore, I would reverse and remand. For the foregoing reasons, I respectfully dissent.

**IRVING, P.J., CARLTON AND WESTBROOKS, JJ., JOIN THIS OPINION.**